(45 South. 601.)

No. 16,634.

STEVENS et ux. v. MRS. E. D. BURGUIERES PLANTING CO., Limited, et al.

(Jan. 9, 1908. Rehearing Denied Feb. 17, 1908.)

1. ANIMALS—VICIOUS ANIMALS.

This is an action for damages for injuries received by plaintiffs' child by being hooked by a vicious cow alleged to belong to defendant, and permitted by it to run at large on the public road in violation of an ordinance of the police jury.

2. SAME—ANIMALS RUNNING AT LARGE.

The public road ran through defendant's plantation, and at the time of the injury the cow was on the public road, but under charge of a keeper, who was transferring it, with others, from a cow lot on one side of the road to a pasture on the other side belonging to defendant. It was not "running at large" on the public road.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Animals, §§ 147–175.]

3. SAME—PERSONS LIABLE.

The animal did not belong to the defendant corporation, but to two of its members, who were at the time on the plantation. By an agreement between the corporation and these members, the latter were permitted to keep the animal on the place, and the corporation placed at their service one of its employés to take care of the animal for them. The employé, while so employed, was not in the service of or acting for the corporation, but in the service of and acting for the owners.

4. SAME—EVIDENCE—VARIANCE.

The husband of one of the owners, and who was in the employ of the corporation as manager of the plantation, was made a defendant with the corporation, and sought to be made responsible personally as being in charge of the animal. He was not in charge. The animal was at the time of the accident in charge of the man who was driving it across, and he was in the employ of the wife, and not the husband. Plaintiffs' pleadings, which were never amended, placed the ownership of the animal in the corporation. Plaintiffs could not change their position on the trial, so as to shift the ownership to some one else.

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by Adlar Stevens and wife against Mrs. E. D. Burguieres Planting Company, Limited, and another. Judgment for plaintiffs, and defendants appeal. Reversed, and suit dismissed.

Percy Saint, for appellants. O'Niell & Alpha and James Rundlett Parkerson, for appellees.

NICHOLLS, J. Plaintiffs, Mrs. Clarice Landry Stevens and her husband, Adlar Stevens, appearing in their own behalf and on behalf of their minor son, Whitney Stevens, represent that the Mrs. E. D. Burguieres Planting Company, Limited (a corporation whereof James B. Brown is president), and Robert Brown, are in solido indebted to petitioners unto the said minor child in the sum of $10,000, with legal interest from judicial demand, for this:

That on the 15th of January, 1906, the said minor child, who was then about nine years of age, was attacked on the public road near Alice B plantation, in this parish, by

a most vicious cow belonging to the said Mrs. E. D. Burguieres Planting Company, Limited, and in the care and keeping and use of the said Robert Brown, who was then the vice president and one of the managers of the said corporation.

That the cow was within the knowledge of the said Robert Brown, by whom and for whose personal use and benefit she was kept and milked, and to the knowledge of the corporation owning her, and within the personal knowledge of each and every officer and member of said corporation, a most dangerous and vicious animal, of a ferocious disposition towards human beings, and a danger and a menace to any and every person within her reach; and that the mere ownership and possession and keeping of such animal, or the permitting of the said animal to live, was in itself a piece of gross negligence and recklessness, and was an unlawful disregard of the safety of human life.

That on the occasion of the attack upon their child the said cow had been wantonly or through criminal negligence permitted to be at large and to roam upon the public highway, and that the damages which she inflicted upon petitioners and their child were the very natural and reasonable consequence of permitting this wild and ferocious animal to be at large upon the public highway.

That said minor child was going on an errand, and was lawfully walking on the public road, having no reason to fear such danger as he was subjected to, when without warning the said cow rushed upon him, and gored him in the face, and viciously stamped and mangled the child almost to death; that the child's upper lip was split from the bottom to the top, and across one side of the face, and a large portion of the lip separated entirely from the other portion of the face, and the entire face, head, and body of the child mangled beyond recognition.

That as a result of said injuries the child was confined to his bed for three weeks, having very high fever, resulting from his internal and external injuries; and that the child suffered a severe mental, nervous, and physical shock, and suffered the most severe physical and mental pain and anguish.

That as a result of said injuries the child cannot pronounce his words or articulate distinctly, and, being theretofore a very bright and precocious child, his future prospects in life and his opportunities for equipping himself for life's struggles are seriously and materially impaired.

That the child's face is drawn, twisted, and distorted, and puffed out hideously as a result of his laceration by the cow's horns, and the child is therefore maimed and disfigured and mutilated permanently, and that as a consequence the child is now and will be always through life subjected to humiliation, contempt, ridicule, and mortification at his disfigurement to his features and the impediment in his speech.

That the medical attention and medicines and nursing of the said child during his sickness and suffering were worth and cost petitioners more than $200 and caused a loss of time amounting to fully $300; that petitioners have each suffered damages for their personal mental suffering, anxiety, and distress at their child's affliction and dangerous illness to the amount of $2,000, or $1,000 to each of them; and that they have each suffered damages for their distress, humiliation, and mortification on account of the permanent disfigurement of their child and his permanent impediment to his speech and articulation to the amount of $2,500, one-half to each of them; and they averred that their aforesaid child has suffered damages in the full sum of $5,000, as follows: One thousand dollars by reason of the mental and physical pain which the child suffered during three weeks' sickness and confinement to his bed; and the sum of $4.000 for the child's permanent disfigurement and impediment, and the consequent humiliation and mortification and

disabilities through life. Petitioners averred amicable demand in vain.

In view of the premises plaintiffs prayed that the Mrs. E. D. Burguieres Planting Company, Limited, and Robert Brown individually, be cited, and that there be judgment in favor of petitioners and against the two defendants, "Mrs. E. D. Burguieres Planting Company, Limited," and Robert Brown, in solido, in the sum of $10,000 as aforesaid, with legal interest from judicial demand.

Defendants answered. After pleading the general issue, they averred that, if the plaintiffs' son was injured as alleged, the same was wholly and entirely due to his own carelessness and negligence.

The case was tried before a jury, which returned a verdict in favor of the plaintiffs for $3,000, with legal interest. Judgment was rendered in favor of the plaintiffs and for the benefit of their minor son, Whitney Stevens, against the Mrs. E. D. Burguieres Planting Company, Limited, and Robert L. Brown, in solido, for $3,000, with legal interest.

Defendants appealed.

The decision of this case requires that we should on the threshold examine into and ascertain the relations of the parties thereto to each other and to the ownership and possession of the property connected therewith.

The Burguieres Company, Limited, one of the defendants, is a planting company in the parish of St. Mary, of which Mrs. James B. Brown, Mrs. Robert L. Brown, Mrs. Viguerie, and Mrs. Caillouette are the stockholders. These ladies were four of seven children of Mrs. E. D. Burguieres. Having purchased the interest of three of their co-heirs in the estate which they had all inherited from their mother, they organized the corporation just mentioned and transferred to it the real estate which they had so purchased.

James B. Brown is the president of that corporation and general manager; Robert L. Brown, vice president and manager of the Alice B plantation (one of several plantations belonging to the corporation); and Mrs. Caillouette (who is a widow), treasurer. James B. Brown and his wife lived on the Ivanhoe plantation. Robert L. Brown and his wife and Mrs. Caillouette lived on the Alice B place.

The property transferred to the corporation by the four purchasers did not include the personal effects, nor the cows and various other things which had belonged to their mother. These articles remained in indivision among them, but subsequently Mrs. James B. Brown and Mrs. Viguerie sold their interest therein to Mrs. Robert L. Brown and Mrs. Caillouette.

When the members of the corporation went to live upon the property of the corporation, it was agreed (according to the testimony of Mr. James B. Brown) between the corporation and those members that the latter were permitted to own and keep their cattle on the plantation, and the corporation hired and paid the man who took charge of the cattle. We do not think it is to be disputed as a fact that the man who took charge of the cattle was so hired and paid. The testimony shows no separation of property between Robert L. Brown and his wife. She accompanied her husband to the Alice B plantation, of which he was the manager.

A public road passes through that plantation; a cattle pasture being on one side of that road and the cow lot and sugar house on the other. The cows were driven to the cow lot in the evening and returned to the pasture in the morning, to remain there during the day. They were transferred from the one place to the other under charge of a man, who drove them across. While the cows on the plantation on the morning of the 15th of January, 1906, were being moved in charge of an Italian driver, one of them being so transferred, hooked on the public road, and

severely hurt, the face of the son of the plaintiffs, a boy about nine years of age. The driver of the cows was not up with the herd at the time of the occurrence, but had lagged behind an acre or two to talk to a peddler on the road. It was while matters were in this condition that the boy was injured. The boy's father was either an employé or a tenant of the company, and the child, when hooked, was walking along the public road, going to purchase groceries for his parents at the plantation store.

At the time of the occurrence just mentioned there was in existence an ordinance of the parish, "relative to live stock," which prohibited the permitting of horses, mules, horned cattle of any kind or description, sheep, hogs, or goats "to run or rove at large" and subjecting to a penalty the owners of the same who should violate it. The owners or proprietors of the animals were by the ordinance ordered to keep the same within sufficient fences or inclosures.

Plaintiffs contend that the cow that hurt the child was at the time on the public road in violation of that ordinance and that the defendants were in the habit of violating the ordinance. The practice or habit of the defendants in that respect is not an issue in this case. So far as the present litigation is concerned, the only question is whether the ordinance was violated on this particular occasion.

We do not think that it was. The driver may have been negligent or remiss in his duty at the time, and damages might result from that negligence or remissness on its own facts; but that ordinance does not enter as a factor in the determination of the rights and obligations of the parties.

Plaintiffs allege in their petition that "the corporation was the owner of the cow" that did the injury, but such is not the fact. They claim that allegation made no material difference in the case, as at the time of the accident it was in the custody and possession of the corporation, and it was by reason of these facts responsible for it.

Plaintiffs' allegation on that subject is that:

"It belonged to the corporation and in the care and keeping of Robert L. Brown, who was then the vice president and one of the managers of the corporation."

The position which plaintiffs now take as to the custody and care of the cow being in the corporation at the time the child was hurt is predicated upon the fact that the person who was driving the herd at that time "was employed by it and his wages paid by it."

We do not think these facts had the effect of placing the cow in the possession of and custody of the corporation for the owners, or for Robert L. Brown. Those parties had independent rights and privileges and duties of their own in respect to the cow. The corporation may to some extent, and as between itself and the party so employed and paid, have occupied towards each other the relation of employer and employé; but, after it had employed the man, it simply turned him over to members of the corporation, to be by them utilized for their own purposes. When so turned over, the parties themselves had the direction of and control over his actions, and the corporation was not responsible for his acts while under such direction and control. The situation was somewhat analogous to that of a lessor as to his responsibility for the acts of his lessee in the conduct of his business. We are of the opinion that the corporation in this case is not responsible for the injury to the boy. It was not the owner of the animal, it was not on the plantation at the time of the accident, and Robert L. Brown did not have possession of and custody of it for and on behalf of the company.

We now turn to the facts and circumstances connected with the injury to the child.

He was, beyond controversy, hurt while on the public road by a cow, also on that road, under the circumstances stated.

It is disputed whether the animal was of a vicious disposition or not. Miss Veret testified that on two occasions it had run after her; that on one of these occasions she had to take refuge in a bayou near the public road, and on the other by running to the plantation store, getting there just in time to escape being hooked. She and several other witnesses testified that the cow was a bad and dangerous animal, and so known to be by the people on the plantation. Defendants deny that the cow referred to by these witnesses was the one that hooked young Stevens. The jury reached the conclusion, under a conflict of testimony, that Miss Veret's testimony was correct. Both of the Messrs. Brown testify that no complaint of the cow had reached them from any quarter, and that they had never heard or knew that this particular animal was vicious or dangerous.

The only fact testified to which breaks the force of their statement on that point is the declaration made by Miss Veret that when she was run after by the cow she informed Mr. Lecompte, who was an overseer on the plantation, of the fact, and the deduction drawn from it that this information given to Lecompte should be held to be information conveyed to the Browns. Miss Veret said nothing of the matter to Mr. Brown. Lecompte denied that Miss Veret reported the circumstances to him. Her mother, called as a witness, states that she remembered her having done so. Robert L. Brown was manager of the plantation and living upon it. Lecompte was an overseer under him. Plaintiffs contend that there was no necessity for them to directly bring home the knowledge of the vicious nature of the cow; that he was bound to know it, and if the Browns failed to know they were guilty of negligence, which supplied the want of knowledge, if knowledge was actually wanting.

Defendants deny that they can be held presumptively to such knowledge that it was necessary to have established knowledge affirmatively as a fact; that knowledge may be implied presumptively by the possession of an animal wild and fierce by nature, but not from possession of a domestic animal, such as a cow; that they had the right to assume and presume that the cow was kind and gentle until actual knowledge to the contrary was brought home to them, or direct complaint had been made to them; that Lecompte was a suboverseer, and a statement to him of the circumstances of Miss Veret's being run after by the cow could not be held as a statement made to Brown; that it was not in the nature of a complaint to him; that Miss Veret, if run after, in fact was not hurt, and her statement made no impression upon Lecompte, who had completely forgotten the fact.

We now turn to the connection which Robert L. Brown personally had with the accident. Plaintiffs now urge that he had an interest as joint owner in the cow. This contention is inconsistent with and in direct opposition to the allegation of their petition. They did not amend their pleading, and so long as that allegation remains plaintiffs are estopped for the purposes of this suit from claiming the ownership to be other than what they declared it to be. There is nothing, however, going to show that Robert L. Brown was a joint owner. It is true he testified that there had been no separation of property between himself and his wife; but that fact does not carry with it as a necessary consequence that the cow belonged in part to the community. Brown testified that the cow belonged jointly to his wife and Mrs. Caillouette, and that testimony has not been overthrown.

Plaintiffs do not allege that Brown was

personally in charge of the animal when the boy was hurt, but that it was at that time in the care and keeping and use of Robert L. Brown, who was then the vice president and one of the managers of the corporation; that the cow was kept and milked for the personal use and benefit of Brown. It was in fact, as shown by the evidence, in charge at the time of the accident of the man who had been hired and paid by the corporation for the purposes of the members of the partnership who were then on the plantation.

It is not pretended that Brown was a member of the partnership. The fact that the milk of the animal may have been used for the benefit of the families of those ladies does not enter as a factor in the case.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury, and the judgment of the court based thereon and herein appealed from, be and the same are hereby annulled, avoided, and reversed, and plaintiffs' demand is hereby rejected, and their suit dismissed, with costs.