### ABRAHAM v. CASTILLE.
### No. 1413.

Court of Appeal of Louisiana.
First Circuit.
Jan. 21, 1935.

W. C. Perrault and A. M. Guilbeau, both of Opelousas, for appellant.

R. Lee Garland, of Opelousas, for appellee.

LE BLANC, Judge.

This is a suit for damages against the owner of a calf, predicated on article 2321 of the Civil Code, which makes the owner of an animal answerable for the damage caused by it.

The undisputed facts are that this calf, which had strayed on the public road from the pasture in which it was inclosed, was thrown, from an impact with one automobile going in one direction, against the radiator of another car going in the opposite direction. The plaintiff, who was in this last car, claims to have suffered severe injury to her back and ankles by reason of the jolt she received when the car collided with the calf. She charges negligence against the defendant in having permitted the calf to be at large upon the highway in violation of the provisions of an ordinance of the police jury of St. Landry parish which prohibited the roaming at large of cattle on the highway in the Second Police Jury ward of that parish, within the territorial limits of which the accident happened.

The highway referred to is known as the "Pershing Highway" and is the main road connecting the cities of Lafayette and Opelousas. The car plaintiff was in and which was being driven by her son, Ernest Abraham, was traveling northward from Lafayette, and the other car southward from the direction of Opelousas. The defendant's property, which included the pasture in which his cattle were inclosed, is situated on the west side of the highway, a bit south of the town of Sunset, where the accident occurred. The car going south did not stop after striking or being struck by the calf. The occupants were unknown to the litigants in this suit and their testimony was therefore unavailable.

The defense to the suit is threefold: First, that the calf did not belong to the defendant, but was the property of his married son, and that it was in his (defendant's) pasture by sufferance; second, that the pasture was properly inclosed by a lawful fence which had been erected by the Louisiana Highway Commission when the highway on which the pasture abuts had been constructed, and that if the calf escaped through the fence, it was through no fault or negligence on defendant's part in properly maintaining the same, but the damage thereto, of which defendant was ignorant, was caused by the unemployed relief workers, while they were cutting grass along the highway; and, third, that the approximate cause of-the accident was the negligence of the drivers of the two automobiles in not controlling their cars in such manner as to meet the emergency created by the presence of the calf on the highway.

The lower court rendered judgment in favor of the defendant, dismissing the plaintiff's suit at her costs, and she has appealed.

The only witnesses to the accident itself were the plaintiff and her son Ernest, who was driving the automobile she was in. They both testify that the two cars were about to meet when the calf jumped from a ditch on the west side of the road in front of the other car which hit it, the force of the blow throwing it against the radiator of their car. Certainly, as far as the driver of the car plaintiff was in, the accident was unavoidable, and according to their testimony, it would seem that the driver of the other car was no more to blame. There is no merit therefore in the defense that the accident was caused by the negligence of the drivers of the two cars. Neither does there seem to be any more merit in the defense that the calf was not owned by the defendant, but belonged to his son. It appears that this son, named Aloysius, is a married man, who lives with his family in Houston, Tex. Even though it be admitted that the calf belonged to him, it is shown that it was born on the defendant's place, where its mother was kept, and remained there constantly in charge of and under control of the defendant and his tenants. In the case of Stevens v. Mrs. E. D. Burguieres Planting Co., 120 La. 774, 45 So. 601, 603, which is relied on by defendant's counsel in support of this defense, the facts

652

concerning the ownership, possession, and custody of the cow which had caused the damage plaintiff was suing for, were far more complicated and involved than they are in the present case; but the court, in its opinion, specifically stated that it did not think that they "had the effect of placing the cow in the possession of and custody of the corporation for the owners, or for Robert L. Brown." Here, to the contrary, the defendant's own testimony shows that by his keeping the cow and calf in his own pasture, where they had always remained, and permitting his tenants to milk the cow, he exercised acts of ownership and control over the animal which made him responsible in damages if he was otherwise liable.

The important issue in the case is the one regarding the negligence of the defendant, vel non, in not having a proper inclosure to keep his cattle in his pasture, or in failing to keep his fence in good order or repair.

In the case of Demarco v. Gober, 19 La. App. 236, 140 So. 64, this court, although it relieved the owner of liability for damage caused by his mule that was roaming at large on the highway, recognized the rule, as laid down in several decisions of the Supreme Court, to the effect that the "owner of any animal is responsible for damage caused by it, if there is proof of any negligence, however slight." The rule is perhaps best expressed in the case of Martinez v. Bernhard, 106 La. 368, 30 So. 901, 55 L. R. A. 671, 87 Am. St. Rep. 306, as follows: "While the least act of negligence should be enough to hold one liable who owns a dog, yet it must appear that there was some negligence, however slight." In the Demarco v. Gober Case, we held that the law makes no distinction between the kinds of animal the owner may have which may have caused the damage and the same burden of proof is placed on him. The proof in that case showed that the owner was not negligent "in the slightest degree." There may be said to be some speculation, from a reading of the decision, as to what would have been the result had it been shown that there was a local ordinance prohibiting the roaming of cattle at large on the highway, which is the important feature in this case.

The first charge of negligence is that plaintiff's fence did not conform to the standard fence required by the ordinances of the police jury of St. Landry parish. In this connection, it may be stated that plaintiff made no allegation in her petition charging a specific violation of any ordinance prescribing what is a lawful fence, limiting her averments to a violation of the ordinance prohibiting the roaming of cattle at large in the Second Police Jury ward of the parish, copy of which ordinance she annexed to her petition. This ordinance was adopted in January 1925, to take effect the following month. The issue is raised in the answer of the defendant, however, wherein it is averred that "he maintains around his fields and pasture, a fence built and erected in conformity with the requirements of the ordinance of the Police Jury of the Parish of St. Landry * * *." The ordinance prescribing what shall constitute a lawful fence was adopted by the police jury of the parish in 1897. It provides that all fences shall be of a specified height and consist of so many boards and barbed wires, according to the number of each that may be used in its construction. It is true that the defendant's fence did not have any plank or board at the bottom, but it is shown to have contained one barbed wire more than any of the fences prescribed under the ordinance. We take it that it was not intended, by the ordinance, to prescribe any kind of fence that would be exclusive, and that whilst a fence built as therein specified would per se be a lawful fence, another kind of fence, shown to accomplish the purpose of preventing animals within its inclosures from roaming at large, would be considered lawful as well. That the fence around the defendant's pasture served such purpose is fully shown by the testimony of several witnesses residing in the neighborhood for years and in a position to observe, all of whom say that none of his cattle were ever seen on the highway. If there was any negligence whatever, it was not in the manner or form of construction of the fence, but in defendant's failure to have kept in it proper repair.

On this point the testimony of plaintiff's witnesses, particularly that of R. M. Hollier, civil engineer, is to the effect that due to the heavy rainfalls in that community, there had been so much soil erosion underneath the bottom wire of the fence as to make openings large enough to permit a calf the size of the one involved in this suit to escape from the pasture. That condition, it is said, had existed for several months, and the contention is that the defendant is charged with knowledge of it and was negligent in not correcting it. It is a bit strange, however, that if the condition was what plaintiff's witnesses would make it, this calf or others in the pasture would not have escaped before. On the other hand, defendant produced three wit-

nesses who stated that two days before this calf escaped from the pasture, the relief workers of the Emergency Relief Administration were cutting grass and weeds along the defendant's property line, using briar hooks. Two of these same witnesses who examined the fence at the place where the calf went through, one of them the same evening and the other the next day, testify that the staples which attached two of the wires to the posts were pulled out and the wires themselves were hanging loose. A calf's tracks were traced to this opening in the fence and this same calf that was killed had been seen, not long before the accident, walking in that direction. From this state of facts, it would seem far more reasonable to infer that this was the opening through which the calf went from the pasture onto the highway, and that being the case, the condition that existed cannot be attributed to any carelessness on the part of the defendant. It was caused by an agency over which he had no control, and the situation was one which he could not be held to have foreseen. As already indicated, he bore a good reputation in the community for maintaining his fences in good order and the evidence shows that he had weekly inspections of their condition made by his tenants. In the case of Martinez v. Bernhard, supra, the court cited, with approval, the comment of Laurent on a decision of the Cours de Paris, to the effect that the owner of an animal cannot be held responsible for the damage when he has not been guilty of any negligence whatever and was not able to foresee or prevent the accident causing it. Laurent, vol. 20, p. 675. The principle is one which can well be held to apply in this case to relieve the defendant from the liability contended for by the plaintiff.

The judgment below correctly rejected the demand and dismissed the plaintiff's suit, and it is accordingly affirmed.