## BOUDREAU v. LOUVIERE.

### No. 1772.

Court of Appeal of Louisiana. First Circuit.

Jan. 11, 1938.

A. Wilmot Dalferes, of Lafayette, for appellant.

A. L. Andrus, Jr., of Eunice, for appellee.

LE BLANC, Judge.

This is a suit for damages against the owner of a mule, predicated on article 2321 of the Revised Civil Code, under which the owner of an animal is made answerable for the damages caused by it.

The plaintiff, Errol Boudreau, alleges in his petition that on the night of September 27, 1936, at about 8.30 o'clock, accompanied by J. A. Bernard and Herman Savoie, two companions, he was driving his 1935 model Ford coupé, from Sunset to Lafayette, La. He avers that he was operating and driving his car on the paved highway in a prudent, careful, and skillful manner, and 'at a rate of 'speed commensurate with his ability to easily bring it to a complete stop within the distance at which he could discern an object on the highway. He avers further that on reaching a point approximately 150 yards south of the entrance to the farm of the defendant, Alcide (Jack) Louviere, a large mule belonging to the defendant stepped directly in front of his automobile, in such manner and from such an angle that it could not be and was not seen by him until it was directly in his path, and that in spite of his every effort to avoid striking it he was unable to do so.

He sets out the negligence of the defendant in that paragraph of his petition in which he charges him with having allowed the mule to gain access to the public highways in the parish of Lafayette in violation of an ordinance of the police jury of that parish adopted June 2, 1890.

As a result of his striking the mule, plaintiff avers that his car was wrecked and damaged, and that he sustained an injury to his leg which required medical attention and disabled him from attending to his business for a period of two weeks. The total damages he claims as a result of the accident amount to the sum of $326 itemized as follows: Damage to his car, $265; wrecker service, $10; doctor's bill, $15; and loss of two weeks' wages, $36.

The defendant for answer denies practically each and every allegation of the plaintiff's petition, and avers especially that he has always maintained, and on the night of the accident was maintaining, a standard conventional fence around the pasture in which he kept his mule and in which the said mule was pastured for the night; that the mule was tame and gentle; and that he (defendant) was entirely unaware that it had escaped from the pasture that night. In the alternative, and in the event it should be held that he was negligent in any manner, defendant avers and pleads, as the proximate and immediate cause of the accident, the gross contributory negligence of the plaintiff, in the following particulars: (1) That plaintiff was driving at an excessive rate of speed; (2) that he was driving without keeping a proper lookout; (3) that his automobile was not equipped with suitable brakes; and (4) that it did not have the proper lighting facilities.

On the issues as thus made, the case went to trial in the lower court resulting in a judgment in favor of the plaintiff in the sum of $289. The district judge assigned no written reasons for judgment. The defendant has appealed.

■ The provision of our Civil Code, article 2321, regarding the liability of the owner of an animal for the damage caused by it is very plain. That article prescribes that "the owner of an animal is answerable for the damage he· has caused." In construing that provision the Supreme Court has on two occasions, at least, emphasized this liability in placing the burden on the owner of the animal "to show that he was without the slightest fault and did all that was possible to prevent the injury." See Bentz v. Page, 115 La. 560, 39 So. 599, 600; Damonte v. Patton, 118 La. 530, 43 So. 153, 8 L.R.A.,N.S., 209, 118 Am.St.Rep. 384, 10 Ann.Cas. 862. This court had occasion to consider the question of the liability of an owner of a calf which had escaped from an inclosed pasture, in the case of Abraham v. Castille, La.App., 158 So. 650, and whilst the owner was relieved from liability on the ground that he was not responsible for the break or opening in the fence through which the calf had escaped, the principle laid down in the cited cases was recognized.

In the present case, the negligence charged against the defendant is that he permitted his mule to escape from his pasture onto the highway, in violation of the police jury ordinance of the parish of Lafayette. A certified copy of that ordinance is annexed to the plaintiff's petition, and it is shown to be the usual form of stock law under which it is made unlawful for stock of any kind to roam at large within the limits of the parish. The effect of the ordinance is of course to require owners of stock or cattle to keep the same within a proper inclosure.

■ The evidence before us shows that the defendant did have a fence surrounding the inclosure in which he kept his mules, but it is also shown that, on the day on which the accident happened, he was constructing a cattle guard which was to be used instead of the gate in the front of his premises. The testimony in regard to the manner, in, which this guard was be-

ing constructed is a bit conflicting, but we believe that the preponderance is to the effect that the mule escaped through it, and the presumption therefore is that there was some fault in the way it was built or in the state in which it was left that night. The defendant failed to rebut this presumption, and, under the doctrine which imposes upon him the duty "to show that he was without the slightest fault and did all that was possible to prevent the accident," he has to be held responsible and liable in damages to the plaintiff unless he has sustained his plea of contributory negligence against the latter.

This plea, as we have already stated, consists of four charges of negligence; driving at an excessive speed, failure to keep a proper lookout, lack of good brakes on the car, and also lack of sufficient lights.

At the locality where the accident happened, the highway is shown to be level and straight for several hundred feet, with no obstruction to the vision of a driver of a motor vehicle. The right of way is 75 feet wide consisting of the usual concrete slab which is 18 feet, the ordinary shoulders, and the balance of a ditch on each side with sloping banks. The slope or grade to the bottom of each ditch is about 18 inches.

Plaintiff and his two companions were the only persons who saw the accident. They all testify that the car was going at a speed of approximately 40 miles per hour, and that none of them saw the mule on or about the highway until the very moment of the collision. Plaintiff states that he was from 5 to 10 feet away from the mule when he first saw it. He says, however, that he had good lights on his car, and that they illuminated the road 150 feet ahead of him. Whilst he speaks of a dark area on the side of the paved portion of the highway, from which he says the mule emerged just before the impact, he nevertheless admits that, when he was 40 feet from the point where the mule was, his lights probably covered an area of 100 feet on the highway, by which we take him to mean, as he in effect admits, that from that distance, even though the mule was off the road, he could have seen it had he been observing carefully. He testifies that his brakes were in good condition, and that going at 40 miles per hour, he could stop his car within 40 feet. The preponderance of the testimony is, however, that he did not stop it within that distance even after striking the mule.

Bernard, one of plaintiff's companions in the car, testifies that he was sitting on the right-hand side and that he did not see the mule prior to its being struck. As we understand his testimony, the mule could not have been seen more than 8 feet in front of the car, and this because there was a light fog which impeded the rays from the lights of the automobile.

Savoie, the other occupant of the car, was seated in the middle, and he states that the mule crossed the road from the left side of the highway, and that its shoulder and head hit the automobile. He did not see it until that moment. This witness contradicts Bernard to the extent that he says it was not foggy that night and that the lights on plaintiff's automobile illuminated the road 90 feet ahead of him.

As it is shown that the highway is fenced along both sides, it is reasonable to assume that the mule was at some point within the 75-foot inclosed right of way, when the automobile was coming towards it. Plaintiff, we think, would want to create the impression that the light beams from his car were concentrated on the paved slab of the highway, and that is why he did not see the mule before he was nearly upon it, as it emerged from this blind area he speaks of. We might readily agree with him that at a distance of only a few feet ahead of the driver of a car at night there is such a thing as a dark area on either side of the car. But certainly with good lights burning properly, as he says his did, at a distance of from 40 feet or more, the light rays spread over a wider area and must surely illuminate an entire highway some 50 to 75 feet wide. This is well illustrated, we think, by the diagram made by the witness Savoie, and offered in evidence by the defendant. The mule, according to plaintiff's version of the accident, had to be on his left-hand side of the highway and within an area of about 35 feet from the center stripe on the concrete slab. Necessarily it consumed some time in coming from the point at which it started to move and crossing over the 9 feet of concrete slab on the left-hand side of the road, before coming in contact with plaintiff's car. Necessarily, also, the rate of speed at which it was then going was very slow compared to that of plaintiff's car. Yet, plaintiff has not satisfactorily explained while during the time that it took for the mule to go this distance, he did not see it before he says he did, and take steps to try to avoid

colliding with it. In our opinion, he almost convicts himself on one of the particulars of negligence charged against him when in answer to the question, how did he account for the fact that with his lights illuminating the highway 150 feet ahead of him and casting a beam on the entire right of way, he did not see the mule, he says: "My attention was directly on the pavement, probably I overlooked the mule, until he got in that dark area. When I saw him he was in front of me." This to us indicates very strongly that the plaintiff was not maintaining a proper lookout. He did not see the mule because, as he virtually admits, he overlooked it. Under the law, a person driving an automobile is held to have seen what he could or should have seen, and to take the necessary precautions, after seeing, to avert an accident. Plaintiff did not see the mule because evidently he was not looking ahead as he should, and he did nothing to avoid the accident but apply his brakes when he was right upon it. Under the doctrine stated, we have to hold him guilty of contributory negligence which bars his recovery.

The judgment appealed from apparently overruled defendant's plea of contributory negligence, and in that respect we find it necessary to disagree and to reverse the same.

For the reasons stated, it is ordered that the judgment appealed from be reversed, annulled, and set aside, and it is now ordered that plaintiff's suit be dismissed and his demands rejected, at his costs.