GLADNEY, Judge.
This action was brought in behalf of Earl Brassett and Sam Harris to recover damages to their crop of sweet potatoes allegedly caused by cattle owned by defendant, Ferrier Roy. Following a trial on the merits of the case, the judge a quo rendered judgment in favor of plaintiffs for $15, and plaintiffs being aggrieved at the quantum allowed by the court, have appealed. The defendant has answered the appeal, claiming that plaintiffs are entitled to no award for damages.
The claim of plaintiffs is predicated on LSA-C.C. Art. 2321, which states the owner of an animal is answerable for the damage caused by it. Plaintiffs owned a crop of sweet potatoes on land leased by Sam Harris from Leon J. Drouin, consisting of 11 acres which were bounded on the south by property of Ferrier Roy. Sam Harris entered into an agreement with Earl Brassett under the terms of which Brassett would cultivate and harvest a crop of sweet potatoes and Harris would receive one-third thereof as his portion in lieu of rent.
After the entire 11 acres were planted there was an excessive amount of rain during the growing season of 1957 which caused substantial losses to crops in many instances and in some cases an entire crop of sweet potatoes was abandoned. Bras-sett planted the 11 acres into four cuts or pieces. A cut, which we will refer to as cut number one, contained approximately two acres and the remaining three cuts contained nine acres. During September a portion of cut number one was partially harvested and 300 bushels of potatoes sold therefrom at a price of from $1.55 to $1.85 per bushel of potatoes, 50 pounds in weight. The harvesting of cut number one was not finished due to rain which regularly fell during the remainder of the fall. It appears none of the rows in the three cuts composing nine acres was opened until the latter part of December, or the first of January, when three rows were opened for the potato inspectors, Lewis Gremillion and Richard Gremillion, solely for the purpose of determining the presence of weevils.
Plaintiffs allege that during the week prior to November 26, 1957, defendant’s cows entirely destroyed all the potatoes in his field. Plaintiffs’ witnesses testified the cows not only ate up the vines, but “dug” the potatoes from the ground and completely destroyed them. Appellants also sought to prove the potatoes gathered from cut number one had a yield of $195 per acre, and that the crop was the same all over the 11 acres.
The defendant does not deny his cattle entered the field containing plaintiffs’ potato crop, but relies on several defenses as the purpose of avoiding liability.
First, it is pointed out Ferrier Roy and Leon Drouin testified the fence between *9 their separate properties was a partnership fence of which Drouin had agreed to maintain the eastern one-half and Roy the western one-half. It is not disputed the cows came from the pasture of Roy and entered plaintiffs’ crop land through that portion of the fence which Drouin was obligated to maintain. Drouin testified when he leased the eleven acre field to Harris it became the latter’s responsibility to maintain the eastern one-half of the fence. Harris denied such an agreement and offered in evidence the written lease between Drouin and himself, which contained no reference to the fence. Secondly, defendant urges that after plaintiffs had harvested a small portion of the crop from cut number one, they abandoned the remainder of the crop which was destroyed by excessive rains. Finally, respondent urges a failure by plaintiffs to prove any damage was actually sustained by Brassett and Harris that could be attributed to defendant’s cattle.
The law pertaining to the liability of an owner for damages caused by his animals is treated in a scholarly manner by Judge Regan, our brother on the Orleans Court of Appeal, in the case of Raziano v. T. J. James & Company, La.App.1952, 57 So.2d 251, 254. In the cited case both the rule of common law and the rule imposed by arts. 2315, 2316 and 2321 of our LSA-Civil Code are compared and discussed with reference to our jurisprudence. With reference to the law of this state, the court therein stated:
“The State of Louisiana has enacted no general statute forbidding the owners from indulging in the custom of allowing their stock to roam at large, but vests this power in the Police Juries of the respective parishes who may enact ordinances to accomplish the desired result. In this connection Article 2321 of the Louisiana Civil Code of 1870 is significant. It provides : ‘The owner of an animal is answerable for the damage he has caused * * *.’
“It would, therefore, appear per se that Article 2321 would impose an absolute liability upon the owner of an animal, irrespective of the existence of any ordinance; however, that article has been interpreted as subject to the negligence or fault requirements of Articles 2315 and 2316 of the Civil Code. Tillman v. Cook, La.App.1941, 3 So.2d 230. This interpretation is enunciated in Tripani v. Meraux, 1936, 184 La. 66, 165 So. 453, 455, where in the opinion it is stated ‘although article 2321 of the Civil Code declares, unqualifiedly, that the owner of an animal is answerable for the damage he has done, the interpretation which has been put upon this article, consistently, by this court, is that the owner of an animal is liable for damages done by the animal only in cases where the owner was guilty of some fault or negligence in his ownership or possession of the animal.’
A fortiori, the burden of proof is on the owner to show that he was without the slightest fault and did all that was possible to prevent the injury. Bentz v. Page, 115 La. 560, 39 So. 599; Damonte v. Patton, 1907, 118 La. 530, 43 So. 153, 8 L.R.A..N.S., 209, 118 Am.St.Rep. 384, 10 Ann.Cas. 862; Boudreau v. Louviere, La.App.1938, 178 So. 173. However, the presumption of fault is a rebuttable one. Mercer v. Marston, 1923, 3 La.App. 97; Matthews v. Gremillion, La.App.1937, 174 So. 703.”
In the instant case although plaintiffs alleged the application of LSA-R.S. 3:2801 et seq., as imposing an obligation upon the owner to contain its stock within a properly constructed enclosure, reference to the statute discloses that it is of no significance in the instant case for it has. application only to livestock upon a highway. The evidence does not show that the cattle entered Drouin’s field from the highway, nor does it show that the Police Jury of Avoyelles Parish had passed any *10 local ordinance pursuant to the statutory provisions.
The case of Raziano v. T. J. James & Company, supra, unquestionably sets forth the rule observed by our jurisprudence. In effect, the duty is imposed upon Roy to show that he was without the slightest fault and that he did all that was possible to prevent an injury by his cattle. He was not an insurer against all damage or injury which might be caused by his livestock for the standard of care required is subject to that imposed by arts. 2315 and 2316 of the LSA-Civil Code. From this it follows that the responsibility for maintaining the entire line of partnership fence between Roy’s property and Drouin’s property was imposed upon Roy if it could be reasonably foreseeable that his cattle would damage the potato crop. This we think would be true even in the absence of any local ordinance requiring the fencing of livestock.
The evidence reflects the east portion of the fence which Drouin should have maintained, through which the cattle passed from Roy’s land to that of Drouin’s, was not maintained properly, but irrespective of whether it was the obligation of- Drouin to maintain that portion of the fence, Roy was not thereby relieved of his duty to keep his own cattle enclosed so as not to harm the crops of Brassett and Harris. Therefore, it is our holding Roy should be responsible for any proven damage occasioned by his cattle.
The plaintiffs, however, have failed to substantiate with legal certainty a pecuniary loss through the destruction of their potatoes by Roy’s cattle. The preponderance of the testimony shows . the entire potato crop, other than the potatoes gathered prior to the commencement of the destructive rains, was abandoned by Brassett. After commencing to gather potatoes from the first cut he was stopped by rains and could never thereafter recover any of the remainder of his potatoes. The testimony of Clifton Venable, Marion Roy, Lewis Gremillion and Richard Gremillion indicates the rain had so completely destroyed the crop it was a complete loss even before the cows broke through the fence during the latter part of November.
For the foregoing reasons we find plaintiffs failed completely to prove they suffered any pecuniary loss whatsoever due to the entrance of defendant’s cows upon their property, and for this reason the judgment is annulled, reversed and set aside, and it is now ordered that there be judgment in favor of defendant, rejecting plaintiffs’ demands at their cost.