975 So.2d 115 (2008)
Bobby Clifton ROWELL and Diane Elaine Rowell, Plaintiff-Appellant.
v.
Marie JACOBS and Randy K. Parker, Defendant-Appellee.
No. 42,821-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 2008.
Rehearing Denied February 7, 2008.
Bobby L. Culpepper, Jonesboro, LA, for Appellant.
Chris L. Bowman, Jonesboro, LA, Stephan M. Cooper, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, J.
Plaintiffs, Bobby and Diane Rowell, filed suit against their neighbor, Marie Jacobs, and her son, Randy K. Parker, alleging that Parker's cow(s) entered plaintiffs' property through Jacobs' dilapidated fence and fell into plaintiffs' swimming pool, causing damage to the tarpaulin pool cover and the pool's liner. Following a bench trial, the trial court entered judgment in favor of defendants, dismissing plaintiffs' demands. For the reasons that follow, we affirm the trial court's judgment.

FACTS
Randy Parker was in the business of raising longhorn cattle on Marie Jacobs' property. Parker's cattle occasionally escaped *117 from the fence surrounding Jacobs' property and entered plaintiffs' property.
In the fall of 2004, plaintiffs covered their swimming pool with a new tarpaulin cover and secured the cover with flotation pillows to preserve it for the winter months. In October or November 2004, Mr. Rowell noticed that the tarpaulin was lying in the pool and the flotation pillows were torn. He also observed cow manure and hoof prints on the deck and in the yard. When Mr. Rowell pulled the tarpaulin back, he noticed holes in it, and he later discovered that the swimming pool liner was torn.
On July 13, 2005, plaintiffs filed suit, alleging that defendants had allowed cattle to enter plaintiffs' property for approximately one year. Plaintiffs also alleged that defendants' fence was inadequate to prevent the cattle from escaping. According to plaintiffs "the fences and gates were in such a dilapidated condition so that the cattle could easily walk through and onto neighboring property." Plaintiffs maintained that defendants were negligent in failing to maintain and inspect their fences and were strictly liable for failing to prevent their animals from causing damage.[1]
During the trial, Mr. Rowell testified that prior to the incident in question, the swimming pool was completely covered with tarpaulin. He stated that he could tell that a cow or cows had gotten into the swimming pool because he was familiar with "what cow feces [and] cow hoof prints look like." He testified that Parker's cows had entered his yard "three or four times" in the past and were the only cows that had gotten into his yard. He further testified that Jacobs' fence was the only fence in the area that was in "deplorable" condition.
Mrs. Rowell also testified that the Parker's cows had gotten out of the fence "about three or four times" in 2004. She stated that Jacobs' fence was in disrepair and "was totally swayed and down." Mrs. Rowell testified that she and Mr. Rowell had repaired the fence on numerous occasions. She stated that on the morning in question, she did not see a cow in the swimming pool or in the yard, but she saw "signs of a cow being  had to have got [sic] in the pool." Mrs. Rowell stated that she believed that a longhorn had caused the damage because one of the flotation pillows had been punctured. She also stated that she observed cow tracks "all around" the swimming pool and cow manure in and around the pool. She stated that the damage had to have been caused by a cow "because of the tracks and the way it tore it up  tore everything up."
Phyllis McCoy, Mrs. Rowell's mother, testified that she had seen cattle on plaintiffs' property that did not belong to them. She stated that Parker's cows would enter plaintiffs' property and walk around the edge of the swimming pool to the front yard. She also testified that in August 2004, she observed three cows jump Parker's fence and enter plaintiffs' property.
Charlotte Shelton testified that she had seen Parker's cows in plaintiffs' yard at least two times in the year before the incident. Shelton testified that she visited plaintiffs the day of the incident, and she saw "the cover was down in the pool and there were big holes in it." She also testified that she saw manure in the pool and *118 on the concrete beside the pool and noticed that the grass was damaged.
Deputy Floyd Parker of the Winn Parish Sheriff's Department testified that on January 18, 2005, he received a complaint from Mr. Rowell with regard to cows being in his back yard. Deputy Parker stated that he went to the Rowells' home and observed "breaks in the fence where the cows came through." Deputy Parker stated:
[T]here was damage to the cover that was over the top of [the swimming pool] and there was damage to the liner and to the pool itself on the shallow end of the pool down there where a cow had tried to  a cow got off in there someway and tried to get out and cracked the liner on the swimming pool and damaged the cover that was over the top of the swimming pool. And there was cow tracks all around the swimming pool.
Lanell Jordan, Mr. Rowell's sister, testified that she had seen cows in plaintiffs' yard on one occasion "months before" the incident at issue. She also stated that the fence separating the properties was "broken in places where a cow could come through." Jordan testified that she saw the damage to the swimming pool approximately two weeks after the incident.
Randy Parker testified that Mr. Rowell called him on a Monday night in November 2004 and informed him that a cow had fallen into his swimming pool and damaged the liner. The following morning, Parker went to plaintiffs' property to inspect the pool. Parker stated that the tarpaulin was covering the pool and the water in the pool was "clear as drinking water." He testified that he did not see any cow tracks or manure on plaintiffs' property. Parker stated that he saw the hole in the swimming pool cover, but stated that it looked like the damage was caused by dry-rotten tarp. Parker denied that a cow could have gotten into and out of the swimming pool because based on his experience with cattle, if a cow had fallen into the swimming pool, it would have panicked and drowned.
Jacobs testified that Mr. Rowell came to her house and informed her that a calf had gotten into his swimming pool. She stated that she told Mr. Rowell to talk to Parker because that issue was "between him and Randy." Jacobs stated that Rowell, who had approached her in the past about buying some of her property, told her that she had "good insurance" and threatened her by stating, "You know, somebody could get this big house you're living in." She opined that plaintiffs concocted the story about the cow/swimming pool incident in an attempt to get her to sell her land.
Following a bench trial, the trial court entered judgment in favor of defendants, stating:
[T]he court, after reviewing its notes, reviewing the photographs and physical evidence presented [finds] that the plaintiffs have failed in their burden of proof by a preponderance of evidence. The court is not convinced that the damage caused to the pool was done by any cattle or animals owned by the defendants herein and will, therefore, deny plaintiffs' claim. . . .
This appeal followed.

DISCUSSION
Plaintiffs contend the trial court committed manifest error in finding they failed to meet their burden of proof. Conversely, defendants maintain the trial court was not clearly wrong in finding that plaintiffs failed to prove, by a preponderance of the evidence, that a cow fell into their swimming pool.
LSA-C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its *119 ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
LSA-C.C. art. 2321 provides, in pertinent part:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. The reviewing court must always keep in mind that "if the trial court's or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Stobart, supra, at 882-83 (quoting Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
Because of its superior position to view the demeanor of witnesses, the trial court's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Rosell v. ESCO, 549 So.2d 840 (La. 1989). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Id.; Collins v. City of Shreveport, 35,172 (La. App.2d Cir.10/31/01), 799 So.2d 630.
Plaintiffs assert that the instant case is analogous to Harris v. Roy, 108 So.2d 7 (La.App. 2d Cir.1958). In Harris, the defendant's cattle broke through a fence and trampled the plaintiff's sweet potato field. The court held that the cattle owner negligently failed to maintain the fence enclosing his livestock and was therefore liable for the damage.
First, we note that this case is distinguishable from Harris, supra. In that case, the defendant did not deny that his cattle entered the plaintiff's sweet potato field. In the instant case, whether defendants' cows caused the damage to plaintiffs' property was an issue that was hotly contested.
Witnesses testified that Parker's cows habitually escaped from their enclosure and entered plaintiffs' property. Witnesses also testified that they observed cow hoof prints and cow manure in the vicinity of plaintiffs' swimming pool. Plaintiffs also submitted photographs which purportedly showed the condition of the fence and the damage to the tarpaulin *120 covering the pool. However, none of the pictures depict a cow in the swimming pool and none of the witnesses testified that they saw a cow in plaintiffs' yard on the morning of the incident. Furthermore, no one saw a cow enter or exit the swimming pool at any time. Under these circumstances, we cannot say that the trial court was manifestly erroneous in concluding that plaintiffs failed to meet their burden of proving that defendants' cows caused the damage to their swimming pool.

CONCLUSION
For the foregoing reasons, the trial court's judgment is hereby affirmed. Costs of this appeal are to be borne by plaintiffs/appellants.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, PEATROSS and DREW, JJ.
Rehearing denied.
NOTES
[1] Defendants filed a reconventional demand, seeking damages for a PVC pipe on plaintiffs' property, which directed certain fluids, including sewage, to be discharged onto defendants' property. The trial court found that defendants (plaintiffs in reconvention) failed to meet their burden of proof with regard to their claim of damage caused by the PVC pipe. Defendants did not appeal this determination.