981 So.2d 802 (2008)
Pansy Liane Hughes HOWARD, Plaintiff-Appellee
v.
Steven Wayne HOWARD, Defendant-Appellant.
No. 43,178-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*803 Richard L. Fewell, Jr., for Appellant.
Donald L. Kneipp, Monroe, for Appellee.
Before BROWN, PEATROSS, and MOORE, JJ.
BROWN, Chief Judge.
The partition of the community property of Steven Wayne Howard and Pansy Lianne Howard was first presented to a hearing officer and then to the trial court. Steven filed in the trial court various written objections to the hearing officer's report. The trial court denied some of these objections. Thereafter, Steven filed an appeal asking this court to reverse certain valuations and classifications made by the trial court. For the following reasons, we affirm.

Discussion
The Second Mortgage
Steven argues that the trial court improperly allocated the debt secured by a second mortgage on the community home to Steven as his separate debt. Steven *804 argues that this allocation is erroneous because the proceeds of the loan were used to construct a community building which served as a hair salon. Accordingly, Steven argues that the second mortgage should be classified as a community debt.
Steven worked as the project manager and subcontractor for Fred Bayles' company, ScenicLand Construction ("ScenicLand"). He managed the construction of the building housing the hair salon as well as projects at 103 Ridgedale #24 and Richland Towers in West Monroe.
Steven testified that he and Pansy took out a loan secured by a mortgage of approximately $140,000 to construct a building at 1703 Lamy Lane which housed the hair salon. When the construction went over budget, Steven stated that they took out another loan secured by a second mortgage on their matrimonial home for approximately $45,000.
In support of his claim, Steven relied upon several documents related to this second loan; these documents included invoices showing that the money from this second loan was used to purchase equipment and material for ScenicLand's projects at Ridgedale and Richland Towers, and other invoices are unclear as to which projects actually benefited from the purchased items. The community has no interest in either the Ridgedale or Richland Towers project. Frankly, Steven's relationship with Fred Bayles and ScenicLand appears to be much more than that of a project manager.
The trial court, calling the issue of the funds secured by the second mortgage "shadowy," found that most, if not all, of the money was used for the benefit of ScenicLand, not the community, and classified the debt as Steven's separate debt.
Except as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. La. C.C. art. 2361. However, the trial court has broad discretion in partitioning community property in a divorce proceeding. Gill v. Gill, 39,406 (La. App. 2d Cir.03/09/05), 895 So.2d 807. A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rowell v. Jacobs, 42,821 (La.App. 2d Cir.01/16/08), 975 So.2d 115.
It is clear that the debt began as a community debt, as it was secured by a mortgage on the Howards' marital home. The money, however, was clearly used in part for ScenicLand's construction costs which did not benefit the community. Several other invoices show purchases of unidentifiable equipment with unknown destinations. The trial court believed these expenditures were also for the ScenicLand projects.
Given this history and the trial court's broad discretion in fact finding, we cannot find that the trial court's classification of the debt as Steven's separate obligation is clearly wrong.
The Hair Salon's Value
Steven argues that the trial court was manifestly wrong in valuing the community building at 1703 Lamy Lane at $160,000 rather than $205,000. The property was built with community funds by Steven and Pansy and was partitioned to Pansy where she operates PS Hair, Inc., which she incorporated prior to her marriage, and is her separate property.
Numerous appraisals were submitted to the hearing officer and trial court regarding the building. The hearing officer placed the value at $205,000. The trial court, however, rejected this valuation and set the value at $160,000
*805 James Hamilton is a Louisiana Certified Real Estate Appraiser who valued the building at $225,000 and $244,000 using two different appraisal methods. Hamilton used the Income Capitalization Approach (Income Approach) because the building houses an operational business currently earning income. The Income Approach utilizes an estimate of potential gross annual income generated by the property and then deducts typical expenses. Hamilton's Income Approach estimated the building to be worth $224,193.
Hamilton also utilized the Cost Approach, wherein the estimation is guided by the principle that a prudent purchaser would not pay more for a property than the cost to reproduce it. Hamilton estimated the value of the building as if it were vacant and available for best use, and used a Sales Comparison Approach by analyzing and comparing the building to similar sites, construction and labor costs to replace the building, miscellaneous indirect costs, depreciation, and entrepreneurial profit. Using the Cost Approach, Hamilton estimated the building to be worth $243,899.75.
Robert Horton, Pansy's expert witness, has been a commercial real estate appraiser for 34 years, has an SRA designation from the Appraisal Institute, and holds a Louisiana Certified General Appraiser license. Horton utilized the Comparable Sales Approach, which involves the comparison of sales of very similar properties in the immediate area of the building. In his report, Horton explained that it was necessary to use slightly older buildings for comparison because the newer buildings were owner occupied; however, he stated that the adjustments were reasonable and based on market evidence.
Horton found three buildings in the near vicinity similar to the community building that had sold within roughly a year of the time he made his estimation, and, adjusting the sale prices of the sold buildings in comparison to the community building by conditions of age, quality, square footage, and amenities, he estimated the value of the community building to be $160,000.
Horton testified that, in his opinion, the Comparable Sales Approach is a superior method to the Cost Approach for estimating the value of the building because the Cost Approach estimates the amount it would take to replace the building, and ignores the fair market value, which is the amount a willing buyer and seller could agree upon as a price for the building. In addition, Horton testified that the property's built-in hair styling stations and extra plumbing for each station's sink should be considered an "over-improvement" that may not bring a dollar for dollar value from the standpoint of cost. These special features could be a marketability detriment to potential purchasers who would have no use for them.
A trial court's choice of one expert's method of valuation of community property in a divorce proceeding over that of another will not be overturned unless it is manifestly erroneous. Ellington v. Ellington, 36,943 (La.App. 2d Cir.03/18/03), 842 So.2d 1160, writ denied, 03-1092 (La.06/27/03), 847 So.2d 1269. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. Gill, supra.
After considering the expert testimony, the trial court found the Comparable Sales Approach to be more reliable than the Cost Approach in estimating the value of the building and set the value of the building at $160,000.
In light of Robert Horton's experience and credentials, as well as his detailed analysis and appraisal, which was based on *806 a well-accepted method of estimation, we find no manifest error in the trial court's decision to set the value of the community building at $160,000. See Gill, supra. In addition, we note that the Income Approach used by James Hamilton is inappropriate in this case. Pansy's business, PS Hair, Inc., is her separate property and is not part of this community partition.
Value of Furniture
The hearing officer set a value of $7,500 for the furniture and fixtures in the hair salon. Pansy disputed this estimation, and submitted reports from Delmar Gay, an auctioneer appraiser admitted by the court as an expert in the area of "auctioneering and/or appraisal of movable property." Gay appraised the furniture and fixtures located in the hair salon at $2,560 and the trial court agreed.
Steven argues that Gay did not attempt to determine the fair market price, but rather the liquidation market value. However, Gay testified that the value placed on movable property located at the hair salon was the value at which the property would sell, and, concerning movable property, the fair market value of the property is that which one would get if an item was placed for sale.
The trial court has broad discretion in partitioning community property in a divorce proceeding. Gill, supra. As noted above, the trial court's choice of one expert's method of valuation of community property in a divorce proceeding over that of another will not be overturned unless it is manifestly erroneous. Id. Given Gay's testimony, we find that the trial court's valuation of the furniture at $2,560 to be reasonable, and thus, we find no error.
Value of the Marital Home
Steven argues that the trial court erred in finding the value of the community home at 4201 Loop Road in Monroe to be $380,000 rather than $350,000.
Michael Burroughs, admitted by the court as an expert in home inspections, performed a limited inspection of the house on August 26, 2006, paying particular attention to the roof. Burroughs testified that there were substantial problems with the roof. However, the trial court found the testimony of Kensil Brewer to be more convincing. Brewer, who was admitted as an expert residential real estate appraiser, testified as to various methods for calculating a house's value, particularly the comparable sales approach. Brewer testified extensively on his methods of valuing the marital home, and compared the sale of three houses of similar size and condition, one of these homes being directly next door to the parties' residence. Brewer also went into detail regarding the remodeled kitchen, master bedroom, and bathrooms. Brewer determined that the property was worth $380,000.
We cannot say that the trial court erred as its determination to set the value of the marital home at $380,000 is clearly supported by a reasonable factual basis set forth in Brewer's expert testimony. See Gill, supra.
Double Reimbursement
Steven argues that the trial court erroneously granted Pansy two reimbursements to her separate property for just one contribution from her separate property to the benefit of the community.
These reimbursements are listed in the hearing officer's report as Item # 8, which consists of funds in bank accounts, life insurance, and investments; and Item # 25, which concerns an order to reimburse Pansy for using the profits from the sale of her separate property, a condominium, *807 to pay the community's income tax liabilities.
It is quite clear that none of the itemized funds recorded by the hearing officer in Item # 8 include profits from the sale of Pansy's condominium. Accordingly, we find that Item # 25 is not a repeat of Item # 8, and we conclude that the trial court did not err in awarding Pansy this reimbursement. A spouse who uses his separate property for the payment of a community debt is entitled to reimbursement. La. C.C. art. 2365; Clemons v. Clemons, 42,129 (La.App. 2d Cir.05/09/07), 960 So.2d 1068, writ denied, 07-1652 (La.10/26/07), 966 So.2d 583.
Pansy's Credit Card Debt
We note that in brief, Steven asks for relief from the trial court's alleged assignment of a credit card debt to the community. However, the trial court clearly found that the credit card debt was not a community debt, and allocated it as a separate debt to Pansy, who has not appealed from this ruling.
Proceeds from Steven's Boat
Steven asserts that he sold his boat, which was his separate property, for $30,000, which he then used to benefit the community. To support his claim for reimbursement, Steven submitted a bill of sale of the boat from himself to Fred Hill, who also testified to this purchase. However, Steven failed to show that his separate funds were used to satisfy a community obligation. La. C.C. art. 2365; Ward v. Ward, 32,617 (La.App. 2d Cir.12/10/99), 748 So.2d 619. Steven failed to produce any bank statements or copies of checks to show that the proceeds from the sale of his boat were used for the benefit of the community or were commingled with community funds. Having failed to provide any proof to justify this reimbursement, we find that the trial court did not err in rejecting this reimbursement claim.

Conclusion
For the foregoing reasons expressed herein, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Steven Wayne Howard.